# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

**NOT FOR PUBLICATION**

|  |  |  |
|---|---|---|
| ALLIED OLD ENGLISH, INC., | : | Civil Action No. 11-1239 (ES)(CLW) |
|  | : |  |
| Plaintiff, | : | **OPINION**[1] |
|  | : |  |
| v. | : |  |
|  | : |  |
| UWAJIMAYA, INC., et al., | : |  |
|  | : |  |
| Defendants. | : |  |
|  | : |  |

**WALDOR, UNITED STATES MAGISTRATE JUDGE**

Before the Court is the motion of defendants Nishimoto Trading Co. ("Nishimoto"), SLU, Inc. ("SLU"), FSI, Inc. ("FSI"), Akira Moriguchi, and defendant and counterclaim plaintiff Uwajimaya, Inc. ("Uwajimaya") (collectively, "Defendants") to transfer this action to the Western District of Washington.  (Docket Entry No. 61, the "Motion").  Plaintiff Allied Old English, Inc. ("Plaintiff" or "Allied") opposed the Motion.  Pursuant to Fed. R. Civ. P. 78, no oral argument was heard.  For the reasons stated below, Defendants' Motion is **GRANTED**.

I.      BACKGROUND

The following facts are taken from Plaintiff's complaint, amended complaint, and moving papers, and are accepted as true for purposes of the instant Motion.

This case arises out of a 2005 transaction between Plaintiff and Uwajimaya subsidiary Sun Luck, Inc.  (Docket Entry No. 1, Complaint ("Compl.") at ¶ 10).  Specifically, a substantial

---

[1] A motion to transfer venue pursuant to 28 U.S.C. § 1404(a) is a non-dispositive pretrial matter.  Prinir (HADAS 1987) Ltd. v. ConAgra Food Packaged Foods Co., Inc., No. 08-914, 2008 WL 5169118, at *1 (D.N.J. Dec. 8, 2008).  "This is true 'because it can only result in the transfer of a case to another federal district, not in a decision on the merits or even a determination of federal jurisdiction.'"  Berg v. Aetna Freight Lines, No. 07-1393, 2008 WL 2779294, at *1 n.1 (W.D.Pa. July 15, 2008) (collecting cases) (citing Adams v. Key Tronic Corp., No. 94 Civ. A0535, 1997 WL 1864, at *1 (S.D.N.Y. Jan. 2, 1997)).  Accord Siemens Fin. Servs., Inc. v. Open Advantage M.R.I. II L.P., No. 07-1229, 2008 WL 564707, at *2 (D.N.J. Feb. 29, 2008).

portion of Plaintiff's business is its line of Asian food products sold under the brand names and trademarks SUN LUCK and NIKO NIKO.  (Id. at ¶ 9).  In 2005, Plaintiff acquired the SUN LUCK brand and line of business from Sun Luck, Inc.  (Id. at ¶ 10).  The transaction was governed by an Asset Purchase Agreement ("APA").  The APA was executed on July 11, 2005. (Id.).  Under the APA, Plaintiff acquired all tangible and intangible assets associated with the SUN LUCK brand and line of business, "including, but not limited to . . . registered and unregistered trademarks, trade names, trade dress, artwork, labels, and all of Sun Luck, Inc.'s knowhow, formulas, recipes, processes, agreements, and other intellectual property, websites and domain names" that had been used by Sun Luck, Inc. in connection with the SUN LUCK line of business.  (Id. at ¶ 11).

Additionally, at the time of the agreement, Sun Luck, Inc. was in the process of phasing out products sold under the ROYAL BLOSSOM trademark.  (Id. at ¶ 14).  The APA granted Plaintiff express permission to use the ROYAL BLOSSOM mark in connection with the sale of products which had not yet been switched over to the SUN LUCK brand.  (Id.).  The APA also incorporated a Non-Compete Agreement between Plaintiff and Uwajimaya, and a Trademark License Agreement between Plaintiff and Uwajimaya pertaining to the NIKO NIKO trademark. (Id. at ¶ 15).  Plaintiff contends that it has continuously manufactured and sold products under the SUN LUCK and NIKO NIKO marks since it acquired the SUN LUCK brand and obtained an exclusive license for certain NIKO NIKO products.  (Id. at ¶ 19).

Plaintiff filed the instant action in March 2011 after coming across information that indicated that Uwajimaya, via its wholesale distribution division Seasia Wholesale Co. ("Seasia"), was selling products in several Washington grocery stores that appeared to infringe Allied contract, trademark, and trade dress rights.  Thereafter, Plaintiff filed an amended

complaint, adding as Defendants Uwajimaya's 100% owned subsidiaries and Seattle-based affiliates SLU and FSI, Akira Moriguchi, an executive of Uwajimaya, and Nishimoto, a nationwide Asian food manufacturing and distribution business that is headquartered in California, and which has a branch in Seattle that does business as Seasia.  (Docket Entry No. 30, Amended Complaint ("Amended Compl.")).   Plaintiff contends that it sought to amend its original complaint, in part, after learning that Nishimoto – not Uwajimaya – owns Seasia.

On April 20, 2012, Defendants filed a joint motion to transfer, arguing that this Court should transfer this case to the Western District of Washington pursuant to 28 U.S.C. § 1404(a). (Docket Entry No. 61).  On May 7, 2012, Plaintiff filed a brief in opposition (Docket Entry No. 64, "Pl.'s Opp. Br.") and, on May 14, 2012, Defendants filed a reply brief.  (Docket Entry No. 66, "Defs.' Reply Br.").  The Motion was formally referred to the Undersigned on July 27, 2012.

## II.   LEGAL STANDARD

In federal court, transfer of venue is primarily governed by 28 U.S.C. § 1404(a).  Section 1404(a) permits a district court to transfer a case to any other district where venue is proper, such as here, "for the convenience of parties and witnesses, in the interest of justice."  28 U.S.C. § 1404(a).  The purpose of section 1404(a) "is to prevent the waste of 'time, energy and money' and to 'protect litigants, witnesses and the public against unnecessary inconvenience and expenses . . . .'"  Ricoh Co., Ltd. v. Honeywell, Inc., 817 F.Supp. 473, 479 (D.N.J. 1993) (quoting Van Dusen v. Barrack, 376 U.S. 612, 616, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964)).

The plaintiff's choice of forum should not be lightly disturbed.  See Jumara v. State Farm Ins. Co., 55 F.3d 873, 879 (3d Cir. 1995).  Accordingly, the party seeking transfer bears the burden of establishing that the proposed transferee forum is a proper forum and that a balancing

of the proper interests weighs in favor of transferring the case there. Id.; Hoffer v. Infospace.com, Inc., 102 F.Supp.2d 556, 572 (D.N.J. 2000).

The decision of whether to transfer a case is committed to the trial court's sound discretion. Cadapult Graphic Sys., Inc. v. Tektronix, Inc., 98 F.Supp.2d 560, 564 (D.N.J. 2000). A reviewing court must first determine whether the action could have been properly brought in the transferee district. Id. at 570. See Shutte v. Armco Steel Corp., 431 F.2d 22, 25 (3d Cir. 1970). Specifically, the movant must demonstrate "the proprietary of venue in the transferee district and jurisdiction over all of the defendants." LG Elecs., Inc., v. First Intern. Comp., Inc., 138 F.Supp.2d 574, 586 (D.N.J. 2001).

After the Court determines that jurisdiction and venue would be proper in the transferee district, the Court must consider whether certain private and public factors favor transfer. See Jumara, 55 F.3d at 879-80. Private interests include: (1) plaintiff's forum preference; (2) defendant's forum preference; (3) whether the claim arose elsewhere; (4) the convenience of the parties as indicated by their relative physical and financial condition; (5) the convenience of the witnesses to the extent that they may be unavailable for trial in one of the fora, and (6) the location of sources such as books and records to the extent that the records could not be produced in the alternative forum. Id.; Days Inns Worldwide, Inc., v. Ram Lodging, LLC, No. 09-2275, 2010 WL 1540926, at *3 (D.N.J. April 14, 2010).

The public interests to consider include: (1) the enforceability of the judgment; (2) practical considerations that could make the trial easy, expeditious, or inexpensive; (3) the relative administrative difficulty in the two fora resulting from court congestion; (4) the local interest in deciding local disputes at home; (5) the public policies of the fora; and (6) the familiarity of the trial judge with the applicable state law in diversity cases. Id.; Ram Lodging,

2010 WL 1540926, at *3.  These factors are not exhaustive.  Instead, "a transfer analysis under Section 1404 is a flexible and individualized analysis which must be made on the unique facts presented in each case."  Lawrence v. Xerox Corp., 56 F.Supp.2d 442, 450 (D.N.J. 1999).

III.    ANALYSIS

A.  Jurisdiction and Venue of the Transferee District

As a threshold matter, this Court must determine if the Western District of Washington is a "district in which this action might have been brought" pursuant to § 1404(a).  A district is one in which an action "might have been brought" if that district has:  (1) subject matter jurisdiction over the claims; (2) personal jurisdiction over the parties; and (3) is a proper venue.  See Shutte, 431 F.2d at 24; Yang v. Odom, 409 F.Supp.2d 599, 604 (D.N.J. 2006).  The Third Circuit made clear in Shutte that the relevant considerations in this regard are jurisdiction and venue:

> [A] transfer is authorized by [§ 1404(a)] only if the plaintiff had an 'unqualified right' to bring the action in the transferee forum at the time of the commencement of the action; *i.e.,* venue must have been proper in the transferee district and the transferee court must have had the power to command jurisdiction over all of the defendants.

Shutte, 431 F.2d at 24.

The Court finds that the Western District of Washington is a district where this action might have been brought because (1) it has subject matter jurisdiction under the Lanham Act, 15 U.S.C. § 1125, and 28 U.S.C. §§ 1331 and 1338; (2) personal jurisdiction over Defendants Uwajimaya, SLU, FSI, Akira Moriguchi, and Nishimoto is appropriate in the Western District of Washington because each defendant either resides there or actively conducts business within the state; and (3) venue is proper because, as set forth above, the alleged conduct giving rise to Plaintiff's claims occurred primarily within the Western District of Washington pursuant to 28

U.S.C. § 1391.  As such, there is no dispute that Plaintiff could have brought this suit in the Western District of Washington.

B. <u>Private Interest Factors</u>

As to the first factor, Plaintiff's expressed choice of forum is New Jersey.  Generally, a plaintiff's choice of forum is given great weight in an analysis under Section 1404(a).  <u>Shutte</u>, 431 F.2d at 25 ("It is black letter law that a plaintiff's choice of a proper forum is a paramount consideration in any determination of a transfer request . . . .").  However, the plaintiff's choice of forum is only one factor for the court to consider.  <u>Stewart Org., Inc. v. Ricoh Corp.</u>, 487 U.S. 22, 31 (1988).  Less deference is given to the plaintiff's choice, for example, when "the case has little connection with the chosen forum."  <u>Newcomb v. Daniels, Saltz, Mongeluzzi & Barrett, Ltd.</u>, 847 F.Supp. 1244, 1246 (D.N.J. 1994).  <u>See also</u> <u>Frato v. Swing Staging, Inc.</u>, No. 10-5198, 2011 WL 3625064, at *3 (D.N.J. Aug. 17, 2011) (explaining that courts in this District "often give less weight to a plaintiff's forum choice when the dispute at the heart of a lawsuit occurred almost entirely in another state.") (citing <u>Santi v. Nat. Bus. Records Mgmt., LLC</u>, 722 F.Supp.2d 602, 607 (D.N.J. 2010)).

Plaintiff's preference would ordinarily weigh against transfer to the Western District of Washington.  Here, however, several independent reasons exist to afford less deference to Plaintiff's choice.  First, as will be discussed at length below, nearly all of the essential operative facts occurred in Washington, not in New Jersey.  "[W]hen the central facts of a lawsuit occur outside the chosen forum, plaintiff's choice of forum is accorded less weight."  <u>NCR Credit Corp. v. Ye Seekers Horizon, Inc.</u>, 17 F.Supp.2d 317, 321 (D.N.J. 1998); <u>Melone v. Boeing Co.</u>, No. 07-1192, 2008 WL 877974 (D.N.J. Mar. 28, 2008).  Second, in assessing the validity of Plaintiff's trademark infringement, unfair competition, and contract claims, the Court is

instructed to look to the location where the allegedly culpable conduct occurred.  Frato, 2011 WL 3625064, at *3.  Again, said conduct occurred in Washington.  As such, Allied is not entitled to the same deferential considerations afforded plaintiffs that bring suit in their home state.

Next, the Court must consider whether Plaintiff's claims arose elsewhere and Defendants' forum preference.  Where the claims arose turns on which forum contains the center of gravity of the dispute, events, and transactions.  See Park Inn Intern., L.L.C. v. Mody Enters., Inc., 105 F.Supp.2d 370, 377-78 (D.N.J. 2000).  "The center of gravity analysis is a fact sensitive inquiry that seeks to identify the forum in which the operative facts giving rise to the litigation occurred."  Travelodge Hotels, Inc. v. Perry Developers, Inc., No.11-1464, 2011 WL 5869602, at *5 (D.N.J. Nov. 22, 2011).  The "locus of the alleged culpable conduct" determines the place where the claim arose.  Van Cauwenberghe v. Biard, 486 U.S. 517, 529, 108 S.Ct. 1945, 100 L.Ed.2d 517 (1988).

The parties dispute the center of gravity of the instant dispute.  Defendants argue that the allegedly culpable conduct occurred primarily in Washington.  Specifically, the stores Allied identified as locations where allegedly infringing sales took place are primarily in Washington.  (Defs.' Reply Br. at 6-7).  Next, Allied's claims arising under the APA arose in Washington as the agreement was primarily negotiated and executed in Washington, performance by the Uwajimaya defendants occurred in Seattle, and the alleged breach occurred in the Seattle area.  (Motion at 8-9).  Lastly, Defendants argue that most of the Defendants presently do no business in New Jersey.  (Motion at 7).  Defendants concede that Nishimoto regularly conducts business in New Jersey.  However, Defendants state that Allied's claims are wholly unrelated to any of Nishimoto's New Jersey-based business.  Instead, Allied's Amended Complaint focuses on Seasia, the Seattle branch of Nishimoto.  That entity, as well as Uwajimaya, has made sales in

New Jersey totaling only a few thousand dollars while the vast majority of its sales – totaling millions of dollars – are in Washington.  (Id.).

Plaintiff disagrees with Defendants' characterization of both the facts underlying this case as well as the key issues that are in dispute.  (Pl.'s Opp. Br. at 12).  Plaintiff acknowledges that specific conduct giving rise to its trade dress, trademark, and contract claims occurred in Washington.  However, Plaintiff argues that its ability to prevail on any and all of its claims will center upon a determination of the rights Allied acquired under the APA – an agreement negotiated on behalf of Allied almost entirely through communications to or from individuals located in New Jersey.  (Id. at 13).  To that end, the majority of potential meaningful witnesses regarding contract interpretation issues are located in New Jersey.  (Id. at 13-14).

The Court believes Allied's framing of the issues in this case is off-base.  Plaintiff maintains that this Court's analysis will hinge on the rights Allied acquired under the APA and related agreements.  Plaintiff, however, misconstrues the nature of the "center of gravity" analysis.  Specifically, Allied fails to ascribe proper weight to the location where the operative facts which form the basis of its claims occurred.  Here, Allied's claims focus on sales of allegedly infringing products that took place primarily in the state of Washington.  Plaintiff's Amended Complaint and discovery requests implicitly acknowledge this reality.  The Amended Complaint references sales to two Seattle-based markets.  Additionally, Allied identified nine Washington or West Coast businesses involved in the sale of allegedly infringing products in its responses to Defendants' first set of interrogatories.  (Defs.' Reply Br. at 8-9).  As such, Plaintiff cannot genuinely dispute Washington's overwhelming ties to the instant litigation.

Numerous courts in this District have found contentions like those of Allied to be insufficient to overcome the "center of gravity" determination.  See, e.g., Perry Developers, Inc.,

2011 WL 5869602, at *6 (holding that plaintiff's "list of contacts with New Jersey . . . fails to give proper focus to the situs of the crucial facts giving rise to the litigation."); Ram Lodging, 2010 WL 1540926, at *6 (finding transfer appropriate to forum where defendant's breach occurred as opposed to situs where services were provided to defendants, plaintiff executed the license agreement, performance under the agreement was contemplated and undertaken, and plaintiff contends it realized financial damages); Days Inn Worldwide, Inc. v. Inv. Prop. of Brooklyn Center, LLC, No. 08-390, 2009 WL 3153277, at *4 (finding that plaintiff's claims centered around alleged acts in the transferee district notwithstanding plaintiff's assertion that it approved, executed, and mailed the operative agreement from New Jersey). This overwhelming precedent further counsels in favor of transfer.

Furthermore, the Court is instructed to focus, primarily, on where the allegedly culpable conduct occurred when determining where Plaintiff's trademark infringement, unfair competition, and breach of contract claims arose. With respect to Allied's trademark infringement and unfair competition claims, the controlling factor is where the allegedly infringing sales took place. As the court explained in Elite Sports Enters., Inc. v. Lococo, "As to claims of trademark infringement and unfair competition, the cause of action occurs 'where the 'passing off' occurs, i.e., where the deceived customer buys defendant's product in the belief that he or she is buying plaintiff's product.'" No. 07-4947, 2008 WL 4192045, at *4 (D.N.J. Sept. 5, 2008) (internal citation omitted). Here, it is undisputed that Defendants operate their business primarily in Washington. Additionally, as noted above, the majority of locations of allegedly infringing conduct Allied has identified are all in Washington or on the West Coast. Thus, the potential "passing off" occurred there, not in New Jersey.[2]  See also LG Elecs., Inc., 138

---

[2] Plaintiff argues that Lococo is distinguishable from the instant matter because, unlike here, the parties engaged in no prior negotiations or agreements. (Pl.'s Opp. Br. at 14). Instead, "the defendants started selling products that the

F.Supp.2d at 590 (transfer appropriate where 47% of allegedly infringing sales were in California in comparison with 0.2% of sales in New Jersey).  Next, in an action sounding in contract, the factors determining where the claim arose include where the contract was negotiated or executed, where the contract was to be performed, and where the alleged breach occurred.  Allianz Life Ins. Co. of N. Am. v. Estate of Bleich, No. 08-668, 2008 WL 4852683, at *5 (D.N.J. Nov. 7, 2008) (internal citation omitted).  Although the parties negotiated the APA in both New Jersey and Washington, the contracts were to be performed in the Seattle area and most of the disputed sales were in Washington.  This further favors transfer.

Fourth, the convenience of the parties in this case constitutes a relatively neutral consideration.  Generally, "[D]istrict courts should focus on the relative physical and financial condition of the parties" when determining which forum is more convenient.  See Santi, 722 F.Supp.2d at 608.  Here, all Defendants are located in Washington, making it most convenient for those parties to litigate in Washington.  Plaintiff is the only party in the case located in New Jersey but argues that because two of the four Defendant Seattle corporations are subsidiaries of Uwajimaya, and are managed by the same individuals from the same office, the location of the corporations does not accurately tip in favor of the Defendants.  (Pl.'s Opp. Br. at 15).  Plaintiff, a small company with a single office building, further contends that transfer would require all of its executives to travel cross-country thus disrupting their business operations.  (Pl.'s Opp. Br. at 16).  The Court finds that all parties would be required to engage in similar cross-country travel.  Accordingly, the parties are in a relatively similar situation.  This factor does not thus weigh in favor of either party.

---

plaintiff believed infringed its trademarks and the plaintiff brought suit."  (Id.)  Plaintiff misreads the Lococo decision.  First, each defendant was party to a franchise agreement with plaintiff to operate stores in California.  Lococo, 2008 WL 4192045, at *1.  Second, Judge Cooper did not rely on the parties' prior agreements, or the relative time they spent negotiating and executing the deal, in determining where the claims arose as a matter of trademark law.  Accordingly, Defendants' reliance on Lococo was not misplaced.

Fifth, "[i]n assessing the private interests of the parties, the convenience of potential witnesses must also be balanced." See Santi, 722 F.Supp.2d at 608 (citing In re Consolidated Parlodel Litig., 22 F.Supp.2d 320, 323 (D.N.J. 1998)). Allied has identified twenty (20) witnesses it may call to support is claims or defenses in its initial disclosures. Twelve of these individuals are located in Washington. (Docket Entry No. 61, Ex. 5, Declaration of Austin Rice-Stitt in Support of Defendants' Joint Motion to Transfer Venue). Of the twenty witnesses identified, only three are located in New Jersey. (Id. at ¶ 4). Accordingly, the majority of individuals with information or knowledge that would substantiate or refute Plaintiff's claims either live or are otherwise located primarily in Washington. See ESP Shibuya Enters., Inc. v. Fortune Fashions Indus., No. 08-3992, 2009 WL 1392594, at *3 (D.N.J. May 15, 2009) (finding transfer appropriate because witnesses with knowledge of the design, development, and manufacture of the allegedly infringing product were located in transferee district).[3]

Lastly, the private factor regarding the location of the relevant documents is a neutral factor that does not clearly weigh in favor of either forum. To that end, neither party has suggested that the transportation, if necessary, of the relevant documents to either forum would be unduly burdensome or expensive. See Fasano v. Coast Cutlery Co., No. 11-3977, 2012 WL 1715233, at * 5 (D.N.J. May 15, 2012). However, on balance, the private interests in this matter would be served by transfer.

C. Public Interest Factors

The relevant public interests also weigh in favor of transferring this case to the Western District of Washington. First, Washington has a strong local interest in this lawsuit because the

---

[3] Plaintiff further argues that four of the six potentially meaningful witnesses regarding contract formation and interpretation issues are located in New Jersey. (Pl.'s Opp. Br. at 13-14). This does not change the Court's analysis. As noted above, courts must focus on the locus of the alleged culpable conduct. This Court has already established that the Western District of Washington contains the "center of gravity" of the dispute.

allegedly culpable conduct – both the infringing sales and Defendants' breach of the APA – took place largely in Washington.  Shibuya, 2009 WL 1392594, at *4 (finding transferee district more appropriate venue because bulk of infringing sales took place in that forum).[4]  Additionally, as this action concerns the conduct of corporations located primarily in Washington, it has a compelling interest in regulating said businesses.  Frato, 2011 WL 3625064, at *6 (granting transfer where "action call[ed] into question the actions of corporations [located in the transferee district] . . . .").

In so holding, the Court acknowledges that both New Jersey and Washington have an interest in adjudicating this action as it implicates the legal interests of its citizens.  Our District certainly has an interest in protecting the contractual rights of New Jersey residents.  See, e.g., Apollo Tech. Corp. v. CentrOsphere Indus. Corp., 805 F.Supp. 1157, 1186-87 (D.N.J. 2008); Perry Developers, Inc., 2011 WL 5869602, at *7 (noting state interest in seeing that contractual obligations are faithfully carried out).  However, as discussed, the breach of the APA, trademark infringement, and unfair competition claims at issue in this action arose in and have a significantly closer connection to the Western District of Washington than to this District.  When both states have an interest in protecting its citizens, courts in this District have found the balance to tip in favor of the State that was found to be the center of gravity of the actions giving rise to the litigation.  Id. (citation omitted).  We therefore conclude that Washington has a stronger interest in adjudicating the present action.

---

[4] Allied argues that it is unfair to deduce that the bulk of infringing sales occurred in the transferee district because discovery has been limited and further discovery may reveal that infringing sales took place in locations outside of Washington.  (Pl.'s Opp. Br. at 22).  To that end, there have been a limited number of reported allegedly infringing Internet sales.  (Id.).  Moreover, Uwajimaya has asserted a counterclaim and an amended counterclaim against Allied for similar types of infringing conduct.  Accordingly, it is more than likely that the products in issue are sold in more than one state.  (Id.).  At this juncture, Defendants have certified to the Court that Uwajimaya has already disclosed its limited number of online sales.  Furthermore, Nishimoto does not sell its NIKO NIKO rice on or to the websites Allied has identified.  (Defs.' Reply Br. at 6) (internal citations omitted).  The Court agrees that Defendants cannot ignore Uwajimaya's counterclaim.  However, weighing all relevant considerations, transfer is still warranted.

Next, there is no evidence that either court poses administrative difficulties or serious practical considerations. Both courts can competently address the merits of the parties' respective arguments and apply the relevant laws appropriately. <u>Santi</u>, 722 F.Supp.2d at 608-09. Nevertheless, as previously stated, the operative facts giving rise to the litigation occurred primarily in Washington. Furthermore, the majority of parties and witnesses pertaining to this matter are located within the state of Washington. It will thus likely be less expensive and more efficient for the case to proceed in the transferee district. <u>Brooklyn Center, LLC</u>, 2009 WL 3153277, at *4. To that end, Allied essentially concedes that docket congestion favors transfer to Washington. (Pl.'s Opp. Br. at 25). <u>See</u> <u>Ram Lodging</u>, 2010 WL 1540926, at *7 (granting transfer where defendants established "more congestion exists for judges in this District than in [transferee district]."). Finally, despite Allied's contentions otherwise, this case is in its early stages. Although some discovery has been exchanged, the parties have not taken any depositions nor has the Court ruled on any dispositive motions. The discovery obtained thus far will be equally applicable in the transferee district in any event. <u>Frato</u>, 2011 WL 3625064, at *7 ("The discovery that the parties have conducted thus far will apply with the same force whether the parties proceed in New Jersey or New York, and the differences in costs associated with taking discovery in either jurisdiction are negligible.").

In sum, in light of the fact that Washington has been determined to be the center of gravity of the instant litigation, and no other public interest factors weigh in favor of this District retaining this case, the <u>Jumara</u> public factors weigh in favor of transferring this case to the Western District of Washington.[5]

---

[5] Plaintiff additionally contends that Defendants' Motion is not timely because Uwajimaya litigated this case in this District for over a year without asserting a preference for litigating this action in Washington. (Pl.'s Opp. Br. at 12). <u>See</u> <u>Orb Factory Ltd. v. Design Science Toys, Ltd.</u>, 6 F.Supp.2d 203, 209 (S.D.N.Y. 1998) (finding transfer improper when defendant had "defended th[e] action for over a year without complaint of inconvenience."). <u>Orb</u>

IV.     CONCLUSION

For the reasons stated above, Defendants' Motion to Transfer is **GRANTED.**   An appropriate Order shall follow.


                              s/Cathy L. Waldor
                              **Cathy L. Waldor, U.S.M.J.**

---

Factory is distinguishable.  Here, Plaintiff first filed its Amended Complaint in November 2011.  (Docket Entry No. 30).  Nishimoto, one of the Defendants added to this litigation, filed its answer in January 2012.  (Docket Entry No. 44).  Defendants filed this joint Motion approximately three months after Nishimoto filed its answer.  The Court finds this gap in time reasonable.  Moreover, the fact discovery deadline is January 12, 2013.  (Docket Entry No. 53).  Accordingly, transfer will not likely disrupt the court or parties' ability to complete discovery in a timely manner.